UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| NOLAN C. DAVIS, SR. | : | CIVIL ACTION NO. 2:12-cv-1746 |
| VS. | : | JUDGE MINALDI |
| DANIEL GRANGER, ET AL | : | MAGISTRATE JUDGE KAY |

REPORT AND RECOMMENDATION

Before the court is the motion for summary judgment, [doc. 58], filed by *pro se* plaintiff Nolan C. Davis, Sr. (hereafter, "Davis").  Davis is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (hereafter, "LDOC") and he is incarcerated at Allen Correctional Center (hereafter, "ALC") in Kinder, Louisiana.  Named defendants in this matter are the GEO Group, Inc.; ALC Warden Terry Terrell; ALC Deputy Warden Keith Cooley; ALC Housing Unit Captain Daniel Granger; and ALC Case Manager Darren Scruggs (hereafter, collectively, "defendants").  Defendants submitted a brief in opposition. Doc. 85.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.  For the following reasons, **IT IS RECOMMENDED** that the motion be **DENIED.**

I. BACKGROUND

A.   Davis's Claims

Davis argues that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law, on the following issues: (1) that he was exposed to environmental tobacco smoke (hereafter, "ETS") in violation of his Eighth-Amendment rights; (2) that he was provided inadequate medical care in violation of his Eighth-Amendment rights; and (3) that he

-1-

was retaliated against for filing administrative grievances regarding ETS. In the interest of clarity, these claims will be addressed separately.

### 1. *ETS Exposure*

Davis claims that he is constantly exposed to high levels of ETS in violation of his Eighth-Amendment rights. Doc. 58, att. 2, pp. 2–3, 13. He states that defendants do not enforce ALC's no-smoking policy in violation of Louisiana law and LDOC regulations. *Id.* at 19. He claims that the resulting ETS exposure has caused him to suffer serious medical problems, including aggravated sinuses, increased blood pressure, nausea, and dizziness. *Id.* at 2–3, 11.

In support of his ETS claims, Davis provides numerous declarations and exhibits. First, he attaches declarations from six other ALC inmates detailing the extent of the alleged non-enforcement of ALC's smoking policy. Doc. 58, att. 5, pp. 9–24. The declarations state that both inmates and guards alike flagrantly smoke indoors with no adverse consequences and that ETS is pervasive throughout ALC. *Id.* Two of the declarants are smokers who state that they smoke indoors on a regular basis. *Id.* at 18–21.

Next Davis provides a summary of the 2006 report of the United States Surgeon General entitled "The Health Consequences of Involuntary Exposure to Tobacco Smoke" (hereafter "the Surgeon General Report"). Doc. 58, att. 4. He requests that the court take judicial notice of the Surgeon General Report as "scientific evidence [that] there is no safe level of or exposure to secondhand smoke." Doc. 58, att. 2, p. 14.

Davis also attaches copies of ALC's responses to his administrative remedy request (hereafter, "ARP") number ALC-2012-408, in which he requested to be transferred to a different housing unit at ALC. Doc. 58, att. 6, pp. 1–3; doc. 58, att. 7, pp. 13–14. Davis had complained that his health was at risk while he was housed in the Jupiter Unit due to inmates constantly

smoking indoors there. *Id.* at 1. The ARP was denied on the grounds that "officers in Jupiter Unit do write up offenders that are caught smoking indoors." *Id.* The denial further noted that ALC security cannot catch every violator but that ALC would "continue to monitor and make efforts to identify and write-up offenders violating the no-smoking policy." *Id.*

Davis appealed the decision, but was unsuccessful. *Id.* at 2–3. Davis argues that the denial of his ARP evidences that defendants "did not have any concern for [his] safety and health." Doc. 58, att. 3, p. 4.

Finally, Davis attaches the following documents:

a) a copy of the Louisiana Smokefree Air Act, La. R.S. § 40:1300.255(B)(14), [doc. 58, att. 6, pp. 4–23], which prohibited smoking in any state, local, or private correctional facility effective August 15, 2009;

b) a copy of LDOC Regulation No. C-03-008, [doc. 58, att. 6, pp. 24–25]; which prohibited smoking inside LDOC-operated buildings effective August 15, 2009;

c) a copy of ALC Policy and Procedure Manual No. 01-C-09, [doc. 57, att. 6, pp. 26–32], which sets forth the areas at ALC where smoking is prohibited and the exclusive areas where smoking is allowed; and

d) a copy of ALC "Offender Posted Policy No. 021," [doc. 58, att. 6, pp. 33–34], which further clarifies the areas where smoking is prohibited and allowed at ALC.

Davis states that the evidence he has submitted conclusively establishes that the above laws and regulations are routinely ignored and that defendants do nothing to punish violators. Doc. 58, att. 2, pp. 19–21.

### *2. Inadequate Medical Care*

In conjunction with his ETS-exposure claim, Davis claims that defendants failed to provide him proper medical care for his ETS-related injuries. Doc. 58, att. 2, pp. 13, 24. He states that he has complained about his injuries repeatedly but that defendants refuse to properly

evaluate him or provide him the proper medication. Doc. 58, att. 5, pp. 25–30; doc. 58, att. 6, pp. 10–12.

Davis attaches various exhibits in support of his inadequate-medical-care claim. He provides copies of several "health care request forms" which detail the names and dosages of medications prescribed in response to his various complaints. Doc. 58, att. 6, p. 35; doc. 58, att. 7, pp. 1–4. He also provides several self-prepared "descriptions" of these medications. Doc. 58, att. 7, pp. 10–12. Finally, Davis also attaches copies of two "inmate request forms" that he filled out in order to request further medical care and different medication. Doc. 58, att. 7, pp. 5–9.

### 3. *Retaliation*

Davis claims that defendants have retaliated against him due to his complaints over ETS. Doc. 58, att. 2, pp. 28–29. He states that he has been "denied release from the cellblock for no penological justification," and that this action was retaliatory in nature. *Id.* at 29.

In support of the retaliation claim, Davis attaches copies of several "inmate request forms" regarding the cellblock decision. Doc. 58, att. 8, pp. 7–9, 13–14. Davis had been put in administrative segregation in the cellblock for "a Rule 3 violation: defiance." *Id.* In the request forms, Davis complains that he is being kept in the cellblock indefinitely in retaliation for his complaints about ETS.

**B.    Defendants' Response**

Defendants oppose Davis's motion on the grounds that Davis has not presented any evidence of the defendants' actions or inactions. Doc. 85, p. 2. Defendants argue that, to prevail on his claims, Davis must establish that defendants were deliberately indifferent to his health and safety. *Id.* Defendants state that "[a]t most, [Davis] has established only that inmates sometimes

violate the policies in place at ALC prohibiting smoking, but such evidence does not establish defendants' actions, much less defendants' indifference." *Id.* Therefore, defendants argue, Davis has not met his initial burden of proof, and his motion for summary judgment must be denied. *Id.*

Alternatively, defendants argue that there is ample evidence that the smoking policies at ALC "have been, and continue to be, enforced." *Id.* at 3. Therefore, according to defendants, genuine issues of material fact remain such that Davis's motion should be denied. *Id.* In support of this argument, defendants attach affidavits executed by defendants Terry Terrell, Keith Cooley, Daniel Granger, and Darren Scruggs. Doc. 85, atts. 3–6. The affiants all state that they are aware of the smoking policy at ALC and that, when they have noticed violations, they have acted to enforce it. *See* doc. 85, atts. 3–6, p. 1 at ¶ III. The affiants also state that numerous ALC inmates have been sanctioned for smoking in the housing units, including the Jupiter Unit where Davis is primarily housed. *See* doc. 85, atts. 3–6, p. 2 at ¶ IV.

Defendants also attach an affidavit executed by Ed Shirley, the Director of Administrative Services at ALC. Doc. 85, att. 2. Mr. Shirley states that ALC officers enforced the smoking policy by issuing dozens of disciplinary violations against inmates who smoked inside the Jupiter Unit while Davis was housed there. Doc. 85, att. 2, p. 2 at ¶ V. Copies of the LODC and ALC smoking policies are attached to Mr. Shirley's affidavit. Doc. 85, att. 2, pp. 4–12.

## II. LAW & ANALYSIS

### A. Legal Standards

#### 1. Summary Judgment

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion if the movant fails to meet this burden. *Id*.

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party . . . ." *Id.*

#### 2. 42 U.S.C. § 1983

Federal law provides relief against any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, the initial question in a § 1983 claim is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional

violation has been alleged, there is no cognizable claim. In order to hold the defendants liable, plaintiff must allege facts to show (1) a constitutional right has been violated, and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *See Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

Here, because there is no dispute that all defendants were "persons acting under the color of state law," the court need only decide whether a constitutional right was violated.

## B. Analysis

Based on the above standards, each of Davis's claims will be analyzed to determine whether summary judgment is appropriate.

### *1. ETS-Exposure Claim*

Plaintiff's complaint alleges that defendants violated the Eighth Amendment by creating conditions of confinement which endangered his health. In order to state a colorable claim for under the Eighth Amendment, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *see also id.* at 105 ("Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."). As announced by the Fifth Circuit, this requires that an inmate "would have to establish 'first, that the deprivation alleged was sufficiently serious (*i.e.,* an official's act or omission must have resulted in the denial of the minimal civilized measure of life's necessities); and second, that the prison official possessed a sufficiently culpable state of mind.'" *Burleson v. Texas Dep't of Criminal Justice,* 393 F.3d 577, 589 (5th Cir. 2004) (quoting *Herman v. Holiday,* 238 F.3d 660, 664 (5th Cir. 2001)).

In *Helling v. McKinney*, the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to

excessive levels of ETS.  *Helling v. McKinney*, 509 U.S. 25 (1993).  The Court set forth a two-part test, involving an objective and a subjective element, to determine whether exposure to ETS violates a prisoner's Eighth-Amendment rights.  *Id.* at 33–35.  Those elements will be analyzed as to Davis's claims.

### a. Objective Element

Under the objective element of *Helling*, Davis "must show that he himself is being exposed to unreasonably high levels of ETS."  *Helling*, 509 U.S. at 35.  The prisoner must put forward scientific and statistical evidence to support his claim that his exposure to ETS was unreasonable.  *Id.* at 33–35.  In assessing this factor, the court must conduct an inquiry into the seriousness of the potential harm and the likelihood that the smoke will actually cause such harm.  *Id.* at 36.  The court must also "assess whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  *Id.*

A nearly identical situation to the instant case was presented to this court in *Hicks v. Corrections Corp. of America,* 2009 WL 2969768 (W.D. La. 2009).  In *Hicks*, a prisoner incarcerated in the Winn Correctional Center (hereafter, "WCC") filed a § 1983 suit against a number of WCC guards and officials, alleging an aggravation of preexisting bronchial asthma and high blood pressure conditions due to contact with ETS.  *Id.* at *2, *8.  The plaintiff in *Hicks* was placed in a "smoking tier" for ten months, and subsequently transferred to a "fake non-smoking tier."  *Id.* at *2. The plaintiff claimed that, although smoking was technically not allowed in the "non-smoking tier," WCC officials did not "screen the smoking habits of inmates before placing them on the 'non-smoking tiers,' [did] not monitor the 'non-smoking tiers' for

smoking, search for cigarettes, or do anything if an inmate is seen smoking, and that several inmates on those tiers smoke 24 hours a day." *Id.*

Looking to the objective element, the *Hicks* court adopted the scientific evidence in the Surgeon General's Report finding "no safe level of or exposure to second hand smoke . . . as meeting the objective component of *Helling,* as well as the requirement of a showing that society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *Id.* at *6; *see also Sivori v. Epps,* 2009 WL 799463 at *7 (S.D. Miss. 2009) (using the Surgeon General's Report to satisfy the plaintiff's burden of proof in a similar case). Applying the heightened standard as adopted vis-à-vis the Surgeon General's Report, the *Hicks* court concluded that evidence of prolonged exposure to ETS would suffice to satisfy the objective element. *Hicks*, 2009 WL 2969768 at *6 (citing *Murrell v. Chandler,* 277 Fed. App'x 341 (5th Cir. 2008); *Murrell v. Casterline,* 307 Fed. App'x 778 (5th Cir. 2008); *White v. King*, 2008 WL 5272092 (S.D. Miss. 2008); *Wansley v. King*, 2008 WL 4066711 (S.D. Miss. 2008); *Ware v. Batson*, 2008 WL 2773604 (W.D. La. 2008)).

Here, Davis submits declarations from himself and other ALC inmates to the effect that Davis has been exposed to ETS from May 7, 2012, to present. *See* doc. 58, att. 2, p. 2. Although the level of ETS that the plaintiff was exposed to at these times is disputed, it is conceded that, at some point, Davis was exposed to some level of ETS. *See* doc. 85, p. 2. Because the Surgeon General's report concludes that there is "no safe level of or exposure to second hand smoke,"[1] it appears that almost any unwanted exposure to ETS would be enough to satisfy the objective element. *Accord*, *Murrell v. Chandler,* 109 Fed. App'x 700, 701 (5th Cir. 2004) (holding that a prisoner can state an Eighth Amendment claim if he is exposed to ETS, even if the ETS had not

---

[1] As the court did in *Hicks*, the undersigned hereby takes judicial notice of the conclusions of the Surgeon General's Report pursuant to Federal Rule of Evidence 201.

already harmed him). Accordingly, considering the evidence presented herein and the close resemblance to the *Hicks* case, the undersigned concludes that Davis has met his burden of proof as to the objective element of *Helling*.

### b. *Subjective Element*

As to the subjective element of *Helling*, the Supreme Court has established that only "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle,* 429 U.S. at 104; *see also Wilson v. Seiter,* 501 U.S. 294, 303 (1991) (holding that "it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*" to suits involving "inhuman conditions of confinement, failure to attend [a prisoner's] medical needs, or a combination of both . . . ."). Applied specifically to ETS, a plaintiff may state a cause of action under the Eighth Amendment when prison officials "have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling,* 429 U.S. at 35. The existence of deliberate indifference to a prisoner can be inferred from the fact that the risk of harm is obvious or that a prison engaged in conduct that would clearly evidence a wanton disregard for prisoners' serious medical needs. *Hicks,* 2009 WL 2969768, at *7 (citing *Hope v. Pelzer,* 536 U.S. 730, 737–38 (2002); *Easter v. Powell,* 467 F.3d 459, 464 (5th Cir. 2006)). Courts should consider the following factors in evaluating deliberate indifference to ETS: "the adoption of a smoking policy; the administration of that policy; and 'the *realities* of prison administration.'" *Callicutt v. Anderson,* 48 Fed. App'x 916, 916 (5th Cir. 2002) (emphasis in original) (quoting *Helling,* 509 U.S. at 36–37).

Here, Davis asserts that the smoking policy at ALC is routinely ignored and that defendants do nothing to punish violators. Doc. 58, att. 2, pp. 19–21. Accordingly, Davis argues that his exposure to ETS is a result of the defendants' subjective deliberate indifference to his

medical needs. *Id.* Defendants argue that "the policy is, in fact, enforced and that corrections officers have issued "dozens" of disciplinary violations. Doc. 85, p. 3. Furthermore, defendants state that "[a]s policies are in place prohibiting smoking in plaintiff's housing unit, coupled with the fact that the policies are enforced by defendants, plaintiff is not entitled to relief on his claims." *Id.*

With the facts viewed in a light most favorable to defendants, as they must be, there is clearly a genuine issue of material fact as to whether defendants' acted with the deliberate indifference necessary to constitute an Eighth-Amendment violation. The subjective element of deliberate indifference is a highly fact-specific inquiry. *See, e.g.*, *Sivori v. Epps*, 2009 WL 799463 at *8, n. 13 (S.D. Miss. 2009) (noting that ETS claims often require detailed testimony for proper disposition). At this stage, the evidence presented by Davis does not warrant a finding of deliberate indifference. Davis advances blanket allegations and does not present evidence of any specific defendants' knowledge, acts, or omissions. Moreover, although Davis's evidence may establish that inmates smoke in prohibited areas at ALC, it does not establish that such smoking goes unpunished or is tacitly condoned. To the contrary, defendants have submitted affidavits stating that ALC's policy is, in fact, enforced through the issuance of disciplinary violations. *See* doc. 85, atts. 3–6, p. 1 at ¶ III.

Although evidence of a smoking policy does not categorically overcome an ETS-exposure claim, defendants' affidavits certainly create a genuine issue of material fact for trial. *See, e.g.*, *Murrell v. Chandler*, 227 F. App'x 341 (5th Cir. 2008) (reversing grant of summary judgment in favor of defendant because plaintiff's evidence of non-enforcement created genuine issue of material fact for trial); *Perkins v. Terrell*, 2010 WL 5488234 (W.D. La. 2010), *report and recommendation adopted*, *Perkin*s *v, Terrell*, 2011 WL 13466 (W.D. La. 2011) (holding that

existence of a smoking policy is insufficient to summarily dismiss an ETS claim and submitting the ETS claim to the trier of fact). Accordingly, summary judgment is not warranted at this time.

### 2. Inadequate-Medical-Care Claim

In the context of inadequate medical care, deliberate indifference is found only when the facts demonstrate wanton action on the part of prison officials that can be characterized as "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105–06. A plaintiff must allege that "a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Hicks,* 2009 WL 2969768, at *7 (internal citations omitted). Negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir.1993).

The appropriate test balances the needs of the prisoner against the needs of the penal institution and, as such, the critical focus looks to medical necessity, not desirability. *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981). A plaintiff's disagreement with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See e.g. Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992). An allegation that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992). Continuing pain is unpleasant, but it does not automatically demonstrate the occurrence of a constitutional violation. *Id.*

Based on the above standard, summary judgment cannot be granted in favor of Davis on his medical-care claims. It is apparent that Davis has been and continues to be treated by ALC medical staff for his frequent and wide-ranging medical complaints. *See* doc. 58, att. 7, pp. 2–9 (health care request forms showing that Davis has been prescribed medication by prison medical staff for his complaints of dizzy spells and sinus allergies). The fact that Davis feels that the ALC medical staff is "not qualified" to assess his problems [doc. 58, att. 7, pp. 6–9] and that he would prefer different medication [doc. 58, att. 7, pp. 10–12] does not raise his claim to a constitutional dimension. *Varnado*, 920 F.2d at 321.

Accordingly, Davis's motion summary judgment should be denied to the extent it advances claims for inadequate medical care.

### 3. *Retaliation Claim*

Officials may not retaliate against an inmate "for complaining through proper channels . . . ." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). In order to state a cognizable claim for retaliation, an inmate must demonstrate: (1) the inmate's exercise of a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for exercising that right; (3) a retaliatory adverse act; and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

An inmate's personal belief by an inmate that he is the victim of retaliation is insufficient. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Rather, the inmate must present direct evidence of a motivation or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Moreover, in order to establish causation, the inmate must demonstrate that, but for the retaliatory motive, the incident complained of would not have occurred. *Id.*

Under the above standard, Davis is not entitled to summary judgment.  Notwithstanding that Davis correctly sets forth the standard for retaliation claims, his complaint states merely a personal belief that he was "kept in the cellblock without penological justification." Doc. 58, att. 2, p. 29. There is no direct or circumstantial evidence of retaliatory motive on the part of any defendant, nor is there a chronology of events from which retaliation may plausibly be inferred. *See Woods*, 60 F.3d at 1166.  To the contrary, by Davis's own admission, he was placed in the cellblock for violating ALC's rule against "defiance."   Doc. 58, att. 8, p. 8.  He has presented no evidence that his continued placement on the cellblock was retaliatory other than his conclusory allegation that he was kept in the cellblock longer than necessary because he filed the instant case. *Id.*

Accordingly, Davis's motion summary judgment should be denied as to the retaliation claims.

### III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Davis's motion for summary judgment, [doc. 58], be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this report and recommendation have 14 days from its service to file specific, written objections with the clerk of court. A party may respond to another party's objections within 14 days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation 14 days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District**

**Court, except upon grounds of plain error.**

THUS DONE this 31st day of March, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE